Slip Op. 12 - 41

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x

TARGET STORES, A DIVISION OF TARGET  :
CORPORATION,
                                     :
                 Plaintiff,
                                     :
            v.                          Consolidated
                                     :  Court No. 06-00444
THE UNITED STATES,
                                     :
                 Defendant.
                                     :
- - - - - - - - - - - - - - - - - - - x

Opinion & Order

[Upon trial as to classification of gazebo
 assemblies, judgment for the plaintiff.]

                                        Decided:  March 22, 2012

    Rode & Qualey (Patrick D. Gill and Michael S. O'Rourke); Cerny Associates, P.C. (Michael V. Cerny and Marilyn-Joy Cerny), of counsel, for the plaintiff.

    Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge; International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Justin R. Miller, Edward F. Kenny and Jason M. Kenner); and Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (Paula S. Smith), of counsel, for the defendant.


        AQUILINO, Senior Judge: This test case contests classification by U.S. Customs and Border Protection ("CBP") of merchandise imported from China for the plaintiff *sub nom. Sun Gazebo, Summer Island Gazebo, Sean Conway Grand Casual Gazebo,*

*Adagio Gazebo* and *Veranda Hexagonal Gazebo* as "tents" within the meaning of heading 6306 of the Harmonized Tariff Schedule of the United States ("HTSUS"), in particular subheading 6306.22.90 thereof ("Tents: Of synthetic fibers: . . . Other . . . 8.8%"). The importer protested that classification, claiming such goods should have entered duty free under HTSUS subheading 7308.90.9590 ("Structures . . . of iron or steel . . . Other").

Upon CBP denial of the protest(s), confirmed per HQ 967775 (March 14, 2006) via importer application for further review, this case duly commenced pursuant to 19 U.S.C. §1514(a) and 28 U.S.C. §§ 1581(a) and 2631(a).

I

Following joinder of issue, the parties commenced pretrial preparations, during which time counsel for the defendant came to offer to stipulate judgment in plaintiff's favor as follows:

 -- That the Sun, Summer Island, Sean Conway Grand Casual, and Veranda Hexagonal gezebos encompassed by the entries listed on a schedule attached to the proposed stipulation be reliquidated duty free pursuant to HTSUS subheading 7308.90.95.

   --   That the Adagio gazebos encompassed by the entries listed on that schedule be reliquidated at the rate of 3.3% ad valorem prescribed by HTSUS 4421.90.97.[1]

Counsel's letter of transmission of this offer to their adversaries also stated:

> Even though we are stipulating the classification of the merchandise in Consol. Court No. 06-00444, we also write, as a matter of courtesy, to inform you that we will not agree to the stipulation of the cases that are suspended under Consol. Court No. 06-00444.[2]

This condition engendered the following reaction:

> Plaintiff does not agree with your proposed stipulation nor with the disposition of this case on the basis of that stipulation.  Frankly, we do not understand how the government could request the Court to enter a judgment sustaining the claimed classification and at the same time state that it will not follow the decision and

---

[1] By the time of this proposal, CIT No. 06-00444 had been ordered consolidated with subsequent case number 07-00230 that covered additional entries, including Adagios, which have wooden, as opposed to metal, frames, thereby making them arguably classifiable under this subheading ("Other articles of wood: . . . Other").

[2] USCIT Rule 84(c) provides that an action may be suspended under a test case, which this one is, if both involve the same significant question of law or fact, which, according to subparagraph (e) of this rule, must be so alleged in any motion for suspension.
    In accordance with this rule, the court has granted a number of motions made by the plaintiff for suspension under this test case.

> judgment of the Court nor agree to stipulate the same
> claims in any other pending actions involving merchandise
> which is identical or the same in all material respects.
> We also note that the proposed stipulation fails to
> concede or set forth the facts which establish that the
> imported gazebos are not tents.  Plaintiff fully intends
> to proceed to trial.

Claiming to rely on USCIT Rules 54 and 58, the defendant interposed a formal Motion for Entry of Judgment in Plaintiff's Favor.  On its part, plaintiff's continuing demand for trial led to adoption of a pretrial order and a motion *in limine* by the defendant in response thereto.

That threshold motion was directed at exhibit 1 on plaintiff's list, referenced as "Transcript of Record and Certification in *Rona Corporation Inc. v. President of Canada Border Services Agency*, Appeal No. AP-2006-033", and at exhibit 43, a "Copy of decision of Canadian International Trade Tribunal in *Rona Corporation Inc. v. President of Canada Border Services Agency*, Appeal No. AP-2006-033".  Defendant's motion also sought preclusion from the trial of two individuals on plaintiff's list of proposed witnesses, namely, Jeffrey D. Konzet, CBP Office of International Trade, and Mitchel Bayer, CBP National Import Specialist.  The motion with regard to those two was denied during the trial, and each in fact appeared and testified.

        As for the proffered exhibits from Canada, the court reserved decision, pending receipt and consideration of excellent memoranda of law submitted on both sides.  While each exhibit seemingly is relevant, and the decision of the Canadian International Trade Tribunal presumably is entitled to this court's respect, in deciding this case at bar, the undersigned has not found it necessary to look beyond U.S. borders for enlightenment, nor has he done so.  Hence, to the extent that the CITT decision is genuinely a matter of foreign law within the contemplation of USCIT Rule 44.1, as opposed simply to the same analysis of the same provisions of the *Harmonized* Tariff Schedule required herein, this court has not and will not exercise the broad discretion, which that rule of practice grants it.  Ergo, for the record of this matter, defendant's motion *in limine* should be, and it hereby is, granted as to plaintiff's exhibits 1 and 43.

II

        A reason for this disposition is that plaintiff's second numbered exhibit, 2, dominated the trial.  From the first call of the case onward, everyone involved was in close proximity to a Sun Gazebo that had been erected in the well of the courtroom and appeared essentially as follows:



See Plaintiff's Exhibit 8. See also Plaintiff's Exhibit 3, Exhibit 4, Exhibit 5, Exhibit 6, Exhibit 7. The foregoing image has been extracted from exhibit 8, which is the assembly instruction for the Sun Gazebo. It has a list of some 147 parts, including A Center fitting (1), B Lintel (4), C Screen (4), D Pole (87.6 inch) (4), E Pole (65.2 inch) (4), F Bolt (0.24 x 0.98 inch) (16), G Washer (0.24 inch) (48), H Nut (0.24 inch) (16), I Plastic nut cap (16), J Bolt (0.24 x 0.78 inch) (16), K Canopy (1), L Sunshade (1), M Stake (8), and N Bracket (pre-assembled) (8). The instruction is necessary since all of these parts, save the eight pre-assembled

brackets, are packed individually in a cardboard box for retail à la plaintiff's exhibit 3. In terms of substance and number, most are pieces of iron or steel.

The demonstrativeness of this opening evidence was enough to confirm the perspicacity of defendant's attorneys pretrial. They were left at trial to do the best they could defending CBP's classification under the HTSUS that, however inclusive it has become, contains the word "tent" but not the term "gazebo", which, according to the paragon American lexicon, Webster's New International Dictionary of the English Language Unabridged, p. 1041 (2d ed. 1945), probably "humorously formed" from the verb to gaze. Doing exactly that during plaintiff's presentation of admissible evidence caused this court to conclude then and affirm now that its goods, as entered and as expected to be constructed after purchase, do not constitute tents. Plaintiff's expert witness testified extensively as to his knowledge, use, and/or marketing of tents of all kinds and stated, among other things, in his written report that

> there are no similarities between any of the tents that I have used, or observed that look or function as a gazebo.

Plaintiff's Exhibit 80, p. 4. See generally transcript of trial ("Tr."), pp. 329-446. Indeed, defendant's counsel conceded as much.

See id. at 348-49, 358.  That report sought graphically to compare

characteristics of tents with those of gazebos:

| TENT | GAZEBO |
|---|---|
| Portable Shelter | Permanent Shelter |
| Typically Walled | Typically No Walls |
| No Furniture | Usually Furniture |
| Designed to Set Up and Collapse Quickly | Designed to build as one would assemble a permanent structure. Erection and demolition are both time consuming and utilize components, tools and other techniques not associated with the setting up or taking down tents. |
| Designed to Transport Easily | Awkward and Heavy to Transport |
| Made of Lightweight Materials | Heavy Metal and/or Wood Structure |
| Not a Landscape Design Feature | Frequently used as a landscape design feature in a site plan. |
| Form an Enclosure | Open Sided |
| Fabric material is a structural component of tent – cannot be set up without it. | Steel and wood are structural components of tent. Structure is set up without fabric. |
| Fasteners not required or quick lock | Fasteners permanent install |

Plaintiff's Exhibit 80, p. 4.  On its face, this depiction omits[3]

reference to regular elements of tents, to wit, guy wires or ropes

and anchor pegs or stakes that enable them to sustain their

---

    [3] The court finds the subGAZEBO statement "Steel and wood are
structural components of tent" to be off the mark.  While those
substances sometimes comprise tent poles, unlike gazebos, they are
not the essence of tents, their shrouds are.  Cf. Tr., pp. 402-03.

pitchments, nor does it quantify the many more elements of gazebos vis-à-vis tents, e.g., *Summer Island Gazebo* (419 parts), *Adagio Gazebo* (91 parts), *Veranda Hexagonal Gazebo* (133 parts), and *Sean Conway Grand Casual Gazebo* (356 parts). See Plaintiff's Exhibit 13, Exhibit 18, Exhibit 21, Exhibit 26. The record, as developed herein, does not reflect any such numbers for tents.

The parties refer to Ero Industries, Inc. v. United States, 24 CIT 1175, 118 F.Supp.2d 1356 (2000), which involved the correct classification of "playhouses", "play or slumber tents", and "vehicle tents". In determining that those goods should have been classified as toys under HTSUS 9503.90.00, the government's position upon cross-motion for summary judgment caused that court to consider this Explanatory Note to heading 6306:

> Tents are shelters made of lightweight to fairly heavy fabrics of man-made fibers, cotton or blended textile materials, whether or not coated, covered or laminated, or of canvas. They usually have a single or double roof and sides or walls (single or double), which permit the formation of an enclosure. The heading covers tents of various sizes and shapes, e.g., marquees and tents for military, camping (including backpack tents), circus, beach use. They are classified in this heading, whether or not they are presented complete with their tent poles, tent pegs, guy ropes or other accessories.

That court also referred to lexicographic definitions of the term tent *viz*. a collapsible shelter of canvas or other material

stretched and sustained by poles, usually used for camping outdoors (as by soldiers or vacationers); shelters supported by poles and fastened by cord to pegs driven into the ground; "shelter" as used in most definitions of "tent" refers to temporary structures used for protection against the elements, 24 CIT at 1185, 118 F.Supp.2d at 1364. That court proceeded to find that its imports,

> while affording some enclosure, are not "shelters" within most definitions of the term "tent" since the imports were neither designed nor constructed for protection against the elements.

Id., n. 4 omitted.

The record at bar supports the same finding. To the extent those weather "elements" do not include sunshine but are everything else nature has to offer, e.g., hail, rain, sleet or snow, often driven by wind, plaintiff's gazebos offer little or no protection therefrom. Rather, their intended function is demarcation of outdoor home areas, essentially for use during moments of acceptable ambiant air temperatures and meteorological tranquility. Compare Plaintiff's Exhibits 4, 9, 15, 20, 22, 23, 48, 49, 54, 55, 56 and 57 with Tr., pp. 26, 71, 385.

III

After the plaintiff had rested at trial, the defendant took the position that the court has all the facts necessary to

decide this case. Tr., p. 511. And indeed it does; the record evidence establishes without contradiction that plaintiff's merchandise herein is marketed, sold, assembled, displayed, and enjoyed as *gazebos*, not as tents. The only thing they have arguably similar to the latter are their canopies, but those alone do not satisfy HTSUS General Note 1 to Chapter 63 that "applies only to made up articles, of any textile fabric." Rather, plaintiff's goods become essentially structures of metal or wood bolted together external to individual homes and expected to remain so configured for extended periods of time. And the Customs Service apparently once understood such structures to be gazebos, not tents. <u>See</u>, <u>e</u>.<u>g</u>., HQ 082489 (Oct. 31, 1988). That it no longer continues to do so requires that judgment now enter on behalf of the plaintiff.

So ordered.

Decided: New York, New York  
March 22, 2012

/s/  Thomas J. Aquilino, Jr.  
Senior Judge

## J U D G M E N T

### UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge

```
- - - - - - - - - - - - - - - - - - - - x
TARGET STORES, A DIVISION OF TARGET     :
CORPORATION,
                                        :
                Plaintiff,
                                        :
        v.                                   Consolidated
                                        :    Court No. 06-00444
THE UNITED STATES,
                                        :
                Defendant.
                                        :
- - - - - - - - - - - - - - - - - - - - x
```

The test case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that plaintiff's goods that underlie this test case are correctly classifiable under either subheading 4421.90.9740 or subheading 7308.90.9590 of the Harmonized Tariff Schedule of the United States (HTSUS), depending on whether their individual structure is of wood or of iron or steel; and it is further hereby

ORDERED that Customs and Border Protection, United States Department of Homeland Security, reliquidate any entries of said

merchandise that have not been liquidated under the aforesaid HTSUS subheadings and refund to the plaintiff any excess duties paid, together with interest thereon as provided by law.

Dated: New York, New York
       March 22, 2012

                                        　/s/　 Thomas J. Aquilino, Jr.　
                                                Senior Judge